IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VANESSA S.,[1]                                 6:19-cv-01472-BR

        Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

KATHERINE EITENMILLER
MARK A. MANNING
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

        [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3705

   Attorneys for Defendant

**BROWN, Senior Judge.**

  Plaintiff Vanessa S. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

  For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

  Plaintiff filed an application for DIB on May 12, 2016, alleging a disability onset date of March 13, 2016.  Tr. 191-94.[1] The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on August 9, 2018. Tr. 70-88.  Plaintiff was represented at the hearing.  Plaintiff

---

   [1] Citations to the official transcript of record filed by the Commissioner on March 6, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

and a vocational expert (VE) testified.

The ALJ issued a decision on October 19, 2018, in which she found Plaintiff was not disabled, and, therefore, Plaintiff is not entitled to benefits.  Tr. 48-63.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on July 31, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 6, 1979, and was 39 years old at the time of the hearing.  Tr. 191.  Plaintiff has a high-school education.  Tr. 74.  Plaintiff has past relevant work experience as a collector and a telephone-sales associate. Tr. 57.

Plaintiff alleges disability due to bipolar disorder, post-traumatic stress disorder (PTSD), attention-deficit disorder (ADD), depression, agoraphobia, degenerative disc disease, "liver damage," sleep apnea, and "hypothyroidism."  Tr. 91.

Except when noted Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 53-56.

3 - OPINION AND ORDER

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

5 - OPINION AND ORDER

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9ᵗʰ Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9ᵗʰ Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after her March 13, 2016, alleged onset date.  Tr. 50.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity, depressive disorder, borderline

personality disorder, mild obstructive sleep apnea, lumbago,
chronic pain, and "as of April 2018 . . . bilateral carpal tunnel
syndrome with greater severity to the right than the left and
left sided DeQuervain's tenosynovitis."  Tr. 50.  The ALJ found
Plaintiff's impairments of "hypertension, hypothyroidism, anemia,
Vitamin D deficiency, fibroids, menorrhagia, chronic sinusitis,
tonsillar and adenoid hypertrophy, tonsil asymmetry, cystic acne
vulgaris, and bradycardia" are not severe and her "possible
bipolar disorder, agoraphobia, and lumbar dysfunction leading to
a degenerative condition" are "not medically determinable
impairments."  Tr. 51.

        At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 51.  The ALJ found Plaintiff has the RFC to perform light
work with the following limitations:

>       [Plaintiff] can lift and carry 20 pounds
>       occasionally and 10 pounds frequently.  She
>       can stand and/or walk for approximately 6 hours
>       and sit for approximately 6 hours, in an
>       8-hour workday, with normal breaks.  She cannot
>       climb ladders, ropes and scaffold[s] and
>       can frequently perform bilateral handling and
>       fingering.  [Plaintiff] can understand,
>       remember and carry out uninvolved and routine
>       instructions that require only occasional
>       predictable variations from standard procedures
>       (consistent with reasoning level 2), and
>       requires a "low stress job" defined as one with
>       only occasional changes in work setting and
>       work duties and no conveyor belt pace work.  She
>       requires isolated work, defined as having

> no public contact, occasional direct coworker
> interaction with no group tasks (but there is
> no limit on incidental coworker contact), and
> occasional supervisor contact.  [Plaintiff]
> cannot have any exposure to moving mechanical
> parts or high, unprotected place hazards
> as rated by the DOT.  She cannot operate motor
> vehicles.

Tr. 20.

At Step Four the ALJ found Plaintiff cannot perform her past relevant work.  Tr. 57.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy.  Tr. 58.  Accordingly, the ALJ concluded Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony and (2) partially rejected the opinions of Raymond Nolan, M.D., Ph.D., examining physician; Claudia Lake, Psy.D., examining psychologist; and Susan South, Psy.D., reviewing psychologist.

**I.    The ALJ did not err when she partially rejected Plaintiff's testimony.**

As noted, Plaintiff contends the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).  General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that she stopped working due to depression and that "there were weeks where [she] wouldn't get out of bed, and [her] husband and [her] son would be left to take care of the house, and food, and [her] . . . too." Tr. 75. Plaintiff stated she still has "episodes [when she has] difficulty getting out of bed" five or six times a month for anywhere between two and seven days. Tr. 77-78. The ALJ noted "seven days times five is 35. So . . . there's basically no days during the month when you get out of bed?" Tr. 78. Plaintiff explained:

> [I]t depends on the week; where I'm at mentally; what's going on in my family. It's . . . kind of a hit or miss. It makes it hard to do anything. It's been difficult to keep some of my psychological visits. There were a couple that I had to miss a few months ago, but it's just hard.

Tr. 78. Plaintiff testified she does not participate in her child's school activities nor has she attended any of his band performances due to "stress, depression, [and] . . . a lot of anxiety because of all the people." Tr. 78. Plaintiff stated she spends her days on the couch or in bed "just thinking, do[ing] a lot of crying." Tr. 79. Plaintiff does not do household chores and does not engage in social activities. Plaintiff uses Facebook and communicates with her family through Facebook. She stopped going to church because "a lot of Sundays [she] do[es] not] even get out of bed until . . . 1:00, and that's when church is over." Tr. 79-80.

11 - OPINION AND ORDER

Plaintiff noted when she moved to Oregon in mid-2016 there was a period that she did not get mental-health treatment because "[i]t took a few months to get the OHP cards, and then . . . they wanted [her] to make an appointment with a doctor, which was a month out to get the appointment, and then they had to make the referral from there for [her] to see the psychologist."  Tr. 76. Plaintiff testified she is now "actively going to psychiatric treatment" every one or two weeks.  Tr. 77.

Plaintiff stated she suffers from carpal-tunnel syndrome (CTS) and that physical therapy did not alleviate all of her pain.  Plaintiff still has trouble cutting potatoes and "things that are heavy, thick, [or] dense."  Tr. 80.  Cutting "[t]omatoes [is] kind of okay, but holding my hand in the same position for more than two minutes causes my hand to go numb."  Tr. 80. Plaintiff testified she received injections in her left thumb and right wrist, which alleviated her pain for a week, but after that she "was . . . back to the same old kind of popping and numb feeling."  Tr. 81.

Plaintiff stated she also has back pain.  She has requested a referral to physical therapy, but she has not received one yet. She does "yoga stretches through out the day" or bends over and touches her toes to relieve the pain, but she cannot sit through an entire church service.

Plaintiff testified she had been walking three times a week

with "one of her church friends," but she stopped doing so in
October 2017 because "they've kind of been judgmental against me
. . . because there have been days that I've not gone walking,
and they think I'm just maybe being a flake, or don't like them,
and I'm not saying anything, but it's caused an issue and I just
have not bothered to fix that miscommunication."  Tr. 83.  The
ALJ noted Plaintiff told a nurse practitioner in March 2018 that
she had increased her walking.  Plaintiff explained she "wanted
to increase [her] walking, but [she] had not.  That was the plan.
They had also sent [her] over to a gym to get a gym membership,
and [she] went in for the first appointment and they gave [her]
the membership, but [she] never went to the gym and never went
back for the weigh ins to continue to get the free pass."
Tr. 84.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms," but Plaintiff's testimony "concerning the
intensity, persistence and limiting effects of [her] symptoms
[is] not fully consistent with the medical evidence and other
evidence in the record."  Tr. 53.

Specifically, with respect to mental-health issues the ALJ
noted although Plaintiff "has a history of psychological
treatment beginning before the alleged onset [that] includes
instances of reportedly increased anxiety and depression with

suicidal ideation. . . , there is little record of symptoms or treatment from the [March 13, 2016,] alleged onset date through the end of 2016." Tr. 53. The ALJ noted Claudia Lake, Psy.D., conducted a psychological evaluation of Plaintiff on December 1, 2016. Dr. Lake noted she "did not see any symptoms of bipolar disorder." Tr. 359. In addition, Dr. Lake stated many of the symptoms of Plaintiff's depression "may be as a result of a long history of developing maladaptive behaviors to deal with her stressors. It is more than likely at times her suicidal and extreme emotional upheaval is secondary to her maladaptive characterological issues than a significant mental illness. However, posttraumatic stress disorder should not be ruled out." Tr. 359. Dr. Lake concluded Plaintiff would not have difficulty performing "simple and repetitive" or "detailed and complex" tasks, accepting instructions from supervisors, interacting with coworkers and the public, or "performing work activities on a consistent basis without special or additional instruction." Tr. 359-60. Dr. Lake noted Plaintiff reported having agoraphobia, but Dr. Lake "did not witness any significant symptoms of agoraphobia which would have made it difficult for her to even attend to the interview." Tr. 360. Dr. Lake, however, concluded Plaintiff "would probably [be unable] to maintain a regular attendance in a workplace due to her significant anxiety about driving." Tr. 360. Dr. Lake stated it

was "very possible" that Plaintiff's tendency "to want to withdraw[]" when she has "increased stress and concern" could "disrupt her dealing with usual work." Tr. 360. Plaintiff did not begin mental-health counseling until November 2017, at which point she reported "stress from family issues as the main cause of anxiety and depression." Tr. 563. On December 4, 2017, Plaintiff reported she was "able to enjoy herself more, getting out with a friend once or twice a week, walking for exercise, and getting her new apartment fixed up." Tr. 559. On December 28, 2017, Plaintiff reported improvement "in terms of being able to go places without anxiety, but family issues are causing her more stress." Tr. 554. On January 26, 2018, Plaintiff's mental-health counselor, Louise Cackowski, reported Plaintiff's "affect is bright and she is able to laugh quite a bit during this session. She reports that she is still doing her Yoga Monkey app, taking walks, and beginning to recognize that she doesn't have to take care of everyone." Tr. 546. In February 2018 Cackowski reported Plaintiff stated her anxiety was worse because she was "worrying quite a bit about family issues." Tr. 542. Plaintiff "agree[d] that she needs 'girl time' and . . . share[d] . . . she has been able to do this by spending time with a new friend." Tr. 542. After February 2018 Plaintiff cancelled several therapy appointments with Cackowski due to "transportation and other issues going on" and did not see

Cackowski again until May 2018.  Tr. 538.  On April 4, 2018,
however, Plaintiff reported to Whitney Lynn, F.N.P., treating
nurse practitioner, that she "feels [she] is doing much better
than she was without the Lexapro."  Tr. 504.  Plaintiff also
stated she was "doing well" with her insomnia and anxiety on
medication.  Tr. 504.  On May 7, 2018, Plaintiff reported to
Cackowski that she had received a diagnosis of Polycyctic Ovarian
Syndrome, which "explain[ed] her difficulty losing weight, so she
has reduced her exercise regimen a bit, doing only yoga now."
Tr. 538.  Plaintiff reported stress arising from "her father's
substance abuse and her brother's plans to move out."  Tr. 538.
On May 31, 2018, Plaintiff reported:  "[A]lthough her anxiety and
depression levels are still high, she feels some improvement over
the last year" in her ability "to go places with less anxiety."
Tr. 533.  Cackowski discussed with Plaintiff "issues related to
family and social contacts and noted a trend of people with lots
of 'drama' in her life."  Tr. 533.  Plaintiff's last mental-
health session included in the record occurred on June 14, 2018,
at which point Plaintiff worked with Cackowski on "how to set
clear boundaries with family members . . . and [to] learn to be
assertive."  Tr. 528.  In addition, the ALJ noted the record
throughout late 2017 and 2018 reflects Plaintiff's medical-
treatment providers consistently noted Plaintiff was oriented and
alert; had normal mood and affect; and had normal judgment,

insight, memory, behavior, and thought content.  Tr. 446, 450,
453, 455, 458, 462, 467, 470, 475, 478, 496, 501, 506, 512, 522.

As to Plaintiff's physical issues, the ALJ noted "[t]he
medical record . . . is not very abundant and it is also not very
consistent. . . .  There are gaps between treatments and when
additional treatment is scheduled, there is often significant
length between scheduled visits, which does not suggest drastic
limitations are appropriate."  Tr. 56.  The ALJ also noted
Plaintiff's treatment has been "largely conservative as well as
effective."  Tr. 56.  For example, before her diagnosis of CTS
Plaintiff "asserted the primary physical restriction was her back
pain.  However, [Plaintiff] appears to take only over-the-counter
medications to reduce the pain, and these are only taken
sporadically, as needed."  Tr. 56.  On January 16, 2017,
Plaintiff also reported to Valerie Lodge, F.N.P., treating nurse
practitioner, that she had "mild to moderate" stiffness in her
back "for which she at times takes Aleve."  Tr. 375.  On
April 13, 2018, Plaintiff reported to F.N.P. Lynn that she "does
stretching and yoga . . . [,] does not usually take Advil or
ibuprofen, [and] she has been using tumeric [*sic*] supplements."
Tr. 499.  In addition, the ALJ stated Plaintiff's "reports of
pain are also not very severe on the subjective scale.  Even when
the pain was arguably at its worst and requiring chiropractic
care, claimant evaluated it only at the moderate pain scale

range." Tr. 57. Moreover, Plaintiff's "brief chiropractic care [was] effective and there does not appear to be an easily defined underlying diagnosed etiology for the complaints." Tr. 57. The ALJ further noted Plaintiff's physical therapy records "directly contradict [Plaintiff's] assertions" regarding her limitations. Specifically, Plaintiff's "physical examinations routinely indicate no difficulties with standing or walking." Tr. 57. In addition, a May 2019 x-ray of Plaintiff's lumbar spine reflected only "mild multilevel degenerative endplate changes" and "multilevel mild spondylosis." Tr. 14.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II. The ALJ did not err when she partially rejected the opinions of Drs. Nolan, Lake, and South.

Plaintiff asserts the ALJ erred when she partially rejected the opinions of Drs. Nolan, Lake, and South.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of an examining

18 - OPINION AND ORDER

physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

## A.   Dr. Nolan

Plaintiff asserts the ALJ erred when she partially rejected the opinion of Dr. Nolan, examining physician.

On November 19, 2016, Dr. Nolan conducted a consultative physical examination of Plaintiff.  Tr. 353. Dr. Nolan noted Plaintiff was able to go from sitting to standing without difficulty, to walk on her toes, and to walk on her heels.  Plaintiff had a normal tandem gait, normal Romberg test,

and her "squat rise maneuver" was "adequate."  Tr. 353.

Plaintiff had "normal and symmetric" grip strength, normal lower-
extremity strength, normal reflexes, and did not have any muscle
atrophy.  Plaintiff had a restricted "voluntary lumbar range of
motion" and a positive Tinels on her left wrist.  Dr. Nolan
assessed Plaintiff with chronic lower-back pain, a "restricted
cervical range of motion," and obstructive sleep apnea.  Tr. 354.
Dr. Nolan noted a "[q]uestionable diagnosis of carpal tunnel
syndrome.  The fact that it is bilateral may correlate this with
her prediabetic diagnosis." Tr. 354.  Dr. Nolan assessed
Plaintiff with the following functional capabilities and
limitations:

> [B]ending, twisting and turning of the neck and
> trunk should be limited to occasional basis.
> Lifting and carrying should be limited to 10
> pounds on a frequent basis and up to 40 pounds on
> occasion.  At this point no restrictions on lower
> extremity function.  Pushing and pulling activity
> involving upper extremities could be limited to
> occasional basis and [sic] deference to the fact
> that she has the restricted cervical range of
> motion.  If the diagnosis of carpal tunnel
> syndrome were to achieve validation then at some
> point she would require restriction of repetitive
> hand wrist activity to occasional basis.
> Inadequate evidence to justify that restriction
> now. Communication skills are quite reasonable.

Tr. 354.

The ALJ gave Dr. Nolan's opinion partial weight "to the
extent that is [sic] affirms the need for restriction to a range
of light exertion with no more than frequent manipulative

ability." Tr. 55. The ALJ, however, gave "less weight" to Dr. Nolan's opinion that Plaintiff could lift 40 pounds occasionally and limited Plaintiff instead to lifting no more than 20 pounds occasionally.

Plaintiff also asserts she was diagnosed with CTS in April 2018, and, therefore, the ALJ erred when she "failed to acknowledge and consider[] [Dr. Nolan's statement] that [Plaintiff] was limited to occasional hand and wrist activity." Pl.'s Brief at 8. Dr. Nolan's statement, however, regarding Plaintiff's potential limitations if a "diagnosis of carpal tunnel syndrome were to achieve validation . . . at some point" was hypothetical and was not based on evidence in the record at the time he offered his opinion. Plaintiff, in fact, was not diagnosed with CTS until 17 months after Dr. Nolan issued his opinion. Moreover, as the ALJ noted, the record reflects Plaintiff underwent successful treatment for CTS. Specifically, Plaintiff engaged in physical therapy in May and June 2018 for her CTS and was discharged from physical therapy on June 20, 2018, after she had met all of her goals; *i.e.,* decreased pain and improved range of motion, strength, and "function of [both] wrists and hands." Tr. 574. Plaintiff also had improved in her ability to make the bed, to cook, and to perform household tasks. Tr. 574.

On this record the Court concludes the ALJ did not err

21 - OPINION AND ORDER

when she did not limit Plaintiff to occasional hand-and-wrist
activity based on Dr. Nolan's hypothetical statement in his
November 2016 opinion regarding a diagnosis of CTS because the
ALJ provided clear and convincing reasons for doing so based on
substantial evidence in the record.

    **B.**    **Dr. Lake**

        Plaintiff contends the ALJ erred when she partially
rejected the opinion of Dr. Lake, examining psychologist.

        On December 1, 2016, Dr. Lake conducted a mental-
consultative examination of Plaintiff.  As noted, Dr. Lake stated
she "did not see any symptoms of bipolar disorder."  Tr. 359.  In
fact, Dr. Lake stated many of the symptoms of Plaintiff's
depression "may be as a result of a long history of developing
maladaptive behaviors to deal with her stressors.  It is more
than likely at times her suicidal and extreme emotional upheaval
is secondary to her maladaptive characterological issues than a
significant mental illness.  However, posttraumatic stress
disorder should not be ruled out."  Tr. 359.  Dr. Lake concluded
Plaintiff would not have difficulty performing "simple and
repetitive" or "detailed and complex" tasks, accepting
instructions from supervisors, interacting with coworkers and the
public, or "performing work activities on a consistent basis
without special or additional instruction."  Tr. 359-60.
Dr. Lake noted Plaintiff reported having agoraphobia, but

22 - OPINION AND ORDER

Dr. Lake "did not witness any significant symptoms of agoraphobia which would have made it difficult for her to even attend to the interview." Tr. 360. Dr. Lake, however, also noted Plaintiff "would probably [be unable] to maintain a regular attendance in a workplace due to her significant anxiety about driving." Tr. 360. Dr. Lake stated it was "very possible" that Plaintiff's tendency "to want to withdraw[]" when she has "increased stress and concern" could "disrupt her dealing with usual work." Tr. 360.

The ALJ noted Dr. Lake's "examination, in general, supports that there exists mental impairments with symptoms that can limit social interaction and preclude anything other than simple and unskilled tasks." Tr. 54. The ALJ, however, gave Dr. Lake's opinion "little weight [to the extent that] it is intended to suggest psychological symptoms cause any greater degree of restriction." Tr. 54. The ALJ noted Dr. Lake's opinion was somewhat contradictory: Dr. Lake stated Plaintiff would not have difficulty performing "simple and repetitive" or "detailed and complex" tasks, accepting instructions from supervisors, interacting with coworkers and the public, or "performing work activities on a consistent basis without special or additional instruction" and yet Dr. Lake concluded Plaintiff would have "difficulty completing a normal workday/workweek without interruptions from a psychiatric condition . . . [due to]

some difficulty with increased anxiety, [and] her characterological issues may very well disrupt her ability to maintain appropriate and normal work." Tr. 360. The ALJ also noted Dr. Lake relied heavily on Plaintiff's self-reports, which were contradicted by Dr. Lake's "normal finding" on Plaintiff's mental-status examination. Finally, the ALJ accommodated Plaintiff's limitations by limiting her to simple and skilled tasks, a "low stress job," and "isolated work." Tr. 52.

On this record the Court concludes the ALJ did not err when she partially rejected Dr. Lake's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

### C. Dr. South

Plaintiff contends the ALJ erred when she partially rejected the opinion of Dr. South, reviewing psychologist.

On February 1, 2017, Dr. South conducted a review of the record and concluded Plaintiff had mild limitations in her ability to adapt or to manage herself and to understand, to remember, and to apply information. Dr. South also concluded Plaintiff had moderate limitations in her ability to interact with others and to concentrate, to persist, and/or to maintain pace. Specifically, Dr. South found Plaintiff was "not significantly limited" in her ability "to remember locations and work-like procedures"; to understand, to remember, and to carry

24 - OPINION AND ORDER

out "very short and simple instructions"; to maintain attention
and concentration "for extended periods"; to "sustain an ordinary
routine without special supervision"; to "work in coordination
with or in proximity to others without being distracted by them";
to "make simple work-related decisions"; to "complete a normal
workday and workweek without interruptions from psychologically
based symptoms and to perform at a consistent pace without an
unreasonable number and length of rest periods"; to "ask simple
questions or request assistance"; to "accept instructions and
respond appropriately to criticism from supervisors"; to "get
along with coworkers or peers with out distracting them or
exhibiting behavioral extremes"; or to "maintain socially
appropriate behavior and to adhere to basic standards of neatness
and cleanliness."  Tr. 118-19.  Dr. South found Plaintiff was
moderately limited in her ability to understand and to remember
detailed instructions; to carry out detailed instructions; to
"perform activities within a schedule, maintain regular
attendance, and be punctual within customary tolerances"; and to
"interact appropriately with the general public."  Tr. 118-19.

        Plaintiff contends the ALJ erred when she failed to
consider Dr. South's assessment of Plaintiff's moderate
limitations in her ability to understand and to remember detailed
instructions; to carry out detailed instructions; to "perform
activities within a schedule, maintain regular attendance, and be

25 - OPINION AND ORDER

punctual within customary tolerances"; and to "interact appropriately with the general public."  In her assessment of Plaintiff's RFC, however, the ALJ limited Plaintiff to "uninvolved and routine instructions that require only occasional predictable variations from standard procedures (consistent with reasoning level 2)"; a "'low stress job' defined as one with only occasional changes in work setting and work duties and no conveyor belt pace work"; and isolated work "defined as having no public contact, occasional direct coworker interaction with no group tasks (but there is no limit on incidental coworker contact), and occasional supervisor contact."  The ALJ, therefore, addressed and fully accounted for Plaintiff's moderate limitations identified by Dr. South.

On this record the Court concludes the ALJ did not fail to consider Dr. South's assessment of Plaintiff's moderate limitations in the ALJ's assessment of Plaintiff's RFC nor in her conclusion that Plaintiff is not disabled.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four

of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 23rd day of September, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge

27 - OPINION AND ORDER